## THE STATE OF NEW HAMPSHIRE

v.

## MICHAEL ROUBO

November 6, 1995

*Jeffrey R. Howard*, attorney general (*Cynthia L. White*, assistant attorney general, on the brief, and *Julie Kielty Connolly*, attorney, orally), for the State.

*David M. Rothstein*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant, Michael Roubo, was found guilty by a jury of disobeying an officer, RSA 265:4 (1993), and driving after revocation, RSA 263:64 (1993). He argues on appeal that the Superior Court (*O'Neil*, J.) erred by admitting hearsay evidence and by allowing a missing witness inference. We affirm.

In August 1991, three people in a Jeep sped past Laconia Police Officer James Conrad, who was able to observe the driver because the Jeep had no shell or doors. Officer Conrad followed the Jeep and attempted to pull it over after it ran a stop sign, but the Jeep eluded him by turning onto a dirt path. A motor vehicle check of the Jeep's license number revealed that it was owned by Mark DeCormier. Officer Conrad proceeded to DeCormier's house; the Jeep was not there and the house was unoccupied.

After his shift, Officer Conrad returned to DeCormier's house. The defendant, DeCormier's housemate, answered the door. Officer Conrad recognized him as the driver of the Jeep, but the defendant stated that he had been home all evening. DeCormier also appeared and stated that the Jeep had been parked in his driveway all night and that he had been out with his girlfriend. The defendant was charged with driving after revocation of a driver's license and disobeying a police officer.

At trial, the defendant sought to call DeCormier as a witness, but DeCormier successfully asserted his fifth amendment privilege against compelled self-incrimination, *see State v. Richards*, 129 N.H. 669, 673, 531 A.2d 338, 341 (1987), and the court ruled that he would be considered an unavailable witness. *See* N.H. R. EV. 804(a)(1). The defendant presented as a witness an investigator from the public defender's office who interviewed DeCormier in February and March of 1992. The investigator testified that DeCormier made the following statement in March 1992:

> Well, as a matter of fact, I was driving the Jeep that night, but when the officer came to my home to get my plate number I think—um—he accused [the defendant] of driving the Jeep and not me so I told him that [the defendant] was not driving the Jeep.

The court admitted this hearsay statement under the statement against interest exception to the hearsay rule because the driver of the Jeep failed to obey a police officer. *See* N.H. R. EV. 804(b)(3).

When the State attempted to examine the investigator about his February 1992 interview with DeCormier, the defendant objected on the ground that the statement was hearsay and not within any exception to the hearsay rule. The court overruled the objection because "on the issue of credibility it's got to come in." The court also referred to the catch-all hearsay exception in New Hampshire Rule of Evidence 803(24).

The State then asked the investigator whether DeCormier informed him "that he had returned home with his girlfriend?" The investigator replied affirmatively, and the State next asked whether the investigator requested the girlfriend's name. He stated that he had not. The defendant objected because "[t]he defendant has absolutely no obligation to initiate an investigation. We do not have a burden of proof." The court overruled the objection but instructed the jury that "the defendant has no obligation to introduce anything . . . . The burden is upon the State to prove guilt beyond a reasonable doubt, and the burden doesn't shift, and it's not shifting by this question or any other question." On redirect examination, the defendant elicited for the first time the remainder of DeCormier's February statement. The investigator testified, "As I recall, his story to me was that he had the only set of keys for the Jeep; he was out with his girlfriend; and that nobody was driving the Jeep that night."

Prior to the closing arguments, the court issued instructions to the jury, two of which are relevant to this appeal. First, the jury was

given the following missing witness instruction regarding DeCormier:

> DeCormier is not available to testify in person, and his unavailability is not the fault of either the State or the defendant and should not be held against the State or the defendant, nor are you to speculate or consider why DeCormier is not available. It is suffic[ient] to say that he's just not available. You're to use the same standards on credibility of DeCormier as to any other witnesses, and I mention that in credibility. It's the same standards or guides for you.

Second, the court instructed the jury that "[t]he burden of proving guilt is entirely upon the State. The defendant does not have to prove his innocence."

In its closing argument, the State urged the jury to infer from the defendant's failure to call DeCormier's girlfriend that her testimony would have been detrimental to his case. The defendant objected to the missing witness inference advanced by the State, stating in part that

> to attack the defense, which is putting on the statement that DeCormier admitted to it, is one thing. To go and say we've got an obligation to find a witness who—which we were unable to put on is an entirely different issue, and it implicates due process and shifts the burden to the defendant.
>
> The other thing, the missing witness instruction does not invite the State to absolutely speculate on anything that the witness would have said.

The trial judge overruled the objection as follows:

> I don't think it was improper, and I don't think it shifted the burden. And I think if I mention it again to them, I'm just going to emphasize that testimony, and I don't want to do it. In fairness to the defendant, I don't want to be bringing out more of [the State's] argument again if I give that instruction again, *unless you want me to.*

(Emphasis added.) The defendant did not ask the court to reissue the missing witness instruction.

On appeal, the defendant argues that the trial court erred by: (1) admitting DeCormier's February statement for its truth when it did not fall within any of the exceptions to the hearsay rule; and (2) allowing the State to comment on his failure to call DeCormier's

girlfriend, a missing witness who allegedly could corroborate DeCormier's statement that he was driving the jeep on the night in question.

We first address the defendant's claim that the trial court erred by admitting DeCormier's February statement. After the defendant introduced DeCormier's March statement under the statement against interest exception to the hearsay rule, *see* N.H. R. Ev. 804(b)(3), the State sought to introduce part of his February statement as either a prior inconsistent statement or under the general exception to the hearsay rule. *See* N.H. R. Ev. 801(d)(1)(a), 803(24).

The State asked the investigator only whether DeCormier stated that he had returned home with his girlfriend on the night in question. Even if we were to assume that the admission of the investigator's affirmative response to this question was error, we would conclude that the error was harmless. *See State v. Silk*, 138 N.H. 290, 291, 639 A.2d 243, 244 (1994). It resulted in the admission of cumulative evidence, because Officer Conrad had testified earlier in the trial that DeCormier had stated that he had been out with his girlfriend on the night in question. *Cf. State v. Drew*, 137 N.H. 644, 648-49, 633 A.2d 108, 110-11 (1993) (evidence admitted regarding defendant's prior arrest "merely cumulative . . . and thus not prejudicial").

We hold that the trial judge properly admitted the statement on the issue of credibility. "When a hearsay statement . . . has been admitted into evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." N.H. R. Ev. 806. The defendant did not request a limiting instruction under New Hampshire Rule of Evidence 105. "Because the defendant failed to request such instruction[] or object to [its] absence, he cannot now complain of error." *State v. Simonds*, 135 N.H. 203, 207, 600 A.2d 928, 931 (1991). Even if we were to assume further that the defendant can properly complain about the prejudicial effect of the part of DeCormier's February statement that he elicited on redirect examination, on the basis that he did so in light of the testimony elicited by the State, *but see State v. Lainey*, 117 N.H. 592, 596, 375 A.2d 1162, 1164 (1977) (defendant generally cannot complain of testimony elicited by defense counsel), we would find no reversible error. *See* N.H. R. Ev. 806.

The defendant next argues that the court erred by allowing the State to comment on his failure to call DeCormier's girlfriend. Even assuming the State's closing argument was improper, *but see*

*State v. Kelly*, 113 N.H. 222, 223, 306 A.2d 58, 59 (1973) (where defendant injects into trial his activities with a potential witness in order to establish an alibi, State may comment on defendant's failure to call such a witness), we conclude that if the defendant had accepted the trial judge's offer to reissue the missing witness instruction, the instruction would have cured any prejudicial effect created by the State's reference to DeCormier's girlfriend. By refusing the court's offer of a curative instruction, the defendant waived his right to argue that the State's reference to the missing witness caused him unfair prejudice. *State v. Taylor*, 118 N.H. 855, 858, 395 A.2d 505, 507 (1978).

*Affirmed.*

BATCHELDER, J., retired, sat by special assignment under RSA 490:3; all concurred.