Carroll
No. 95-798

THE STATE OF NEW HAMPSHIRE

v.

CARL H. GRAF

January 15, 1999

*Philip T. McLaughlin*, attorney general (*Cynthia L. White*, senior assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices*, of Chichester (*Paul Twomey* on the brief and orally), for the defendant.

THAYER, J. The defendant, Carl H. Graf, appeals his convictions on three counts of aggravated felonious sexual assault, *see* RSA 632-A:2 (1996) (amended 1997), after a jury trial in Superior Court (*Fauver*, J.). We affirm.

The defendant was a friend of the ten-year-old victim's family. In 1993, the victim's parents allowed the victim to stay overnight at the vacation home of the defendant's father. The victim testified that during this visit, the acts alleged in the indictments occurred. The defendant threatened the victim with bodily harm and told the victim that he would not be his friend anymore if the victim told anyone.

The victim did not disclose these incidents until several months later, when he told his younger brother that the defendant had touched his penis. The victim's brother told their mother what the victim had stated, and the mother questioned the victim. The victim testified that he disclosed everything that occurred during the overnight with the defendant.

The defendant was convicted by a jury on three counts of aggravated felonious sexual assault. The defendant argues that the trial court violated his rights to due process, confrontation, and to produce all favorable proofs under both the State and Federal Constitutions when it precluded him from: (1) introducing character evidence that he was not the type of person who would sexually assault children or take advantage of them; and (2) introducing privileged information during the cross-examination of the State's expert witness regarding the victim's sexual history and punishments the victim may have received. The defendant also contends that a communication between the county attorney and the chief justice of the superior court that led to the recusal of the original judge assigned to the defendant's trial denied him due process. Finally, the defendant argues that the trial court erred in admitting hearsay statements made by the victim to his pediatrician without first determining the victim's intent in making those statements.

## I. Character Evidence

The defendant argues that the trial court denied him due process of law and the right to present all favorable proofs under both the State and Federal Constitutions when it precluded him from introducing character evidence. "The New Hampshire Constitution is at least as protective as the Federal Constitution in this area, and we therefore decide this case under the State Constitution, employing federal cases to aid in our analysis." *State v. Newcomb*, 140 N.H. 72, 78, 663 A.2d 613, 617 (1995). Specifically, the defendant sought to introduce testimony, through opinions and specific instances of conduct as testified to by other witnesses, to show that: (1) he was not the type of person who would engage in aggravated felonious sexual assault; and (2) he was not the type of person who would take advantage of children. Both the right to due process and the right to produce all favorable proofs are found in Part I, Article 15 of the New Hampshire Constitution. N.H. CONST. pt. I, art. 15; *see State v. Castle*, 128 N.H. 649, 651, 517 A.2d 848, 849 (1986).

We begin by analyzing the defendant's claim that his right to produce all favorable proofs was violated by preclusion of the testimony. Both the Compulsory Process Clause of the Federal Constitution and the right to produce all favorable proofs under Part I, Article 15 give a defendant only the right to produce witnesses, not to produce their testimony. *See State v. Roy*, 140 N.H. 478, 482, 668 A.2d 41, 44 (1995); *State v. Taylor*, 118 N.H. 859, 861, 395 A.2d 1239, 1240-41 (1978). Part I, Article 15 does not entitle the

defendant to introduce evidence in violation of the rules of evidence, *Newcomb*, 140 N.H. at 79, 663 A.2d at 618, and, therefore, a judge may exclude a witness's testimony on evidentiary grounds, *Taylor*, 118 N.H. at 861, 395 A.2d at 1240. Because the defendant does not contend that he was prevented from producing witnesses, his argument that the trial court's refusal to allow him to present evidence of his good character violated his right to produce all favorable proofs has no merit. For the same reason, we find no merit in the defendant's second argument that the trial court's refusal to allow the defendant to introduce privileged information regarding the victim's history violated his right to produce all favorable proofs.

We next address the defendant's argument that the trial court's refusal to allow him to introduce good character evidence through opinions violated his right to due process. The defendant's brief advances an evidentiary argument, without any meaningful discussion of how his due process rights were violated. Accordingly, we will address only the defendant's evidentiary argument. *Cf. State v. Fecteau*, 133 N.H. 860, 873, 587 A.2d 591, 598 (1991) (addressing defendant's due process argument as evidentiary argument only where defendant failed to specifically raise issue as constitutional matter to trial court).

"[T]he trial court has broad discretion in ruling on the admissibility of [character] evidence, and we will not disturb its ruling absent an abuse of discretion." *State v. Newell*, 141 N.H. 199, 200, 679 A.2d 1142, 1143 (1996) (quotation and brackets omitted). To demonstrate an abuse of discretion, the defendant must show that the court's ruling was "clearly untenable or unreasonable to the prejudice of [his] case." *State v. VanDerHeyden*, 136 N.H. 277, 284, 615 A.2d 1246, 1250 (1992) (quotation omitted).

 New Hampshire Rule of Evidence 404(a) governs the admissibility of character evidence. The general rule is that evidence of a person's character or trait of character is inadmissible for the purpose of proving that the person acted in conformity therewith on a particular occasion. N.H. R. EV. 404(a). "The rationale behind this rule is the notion that this evidence has slight probative value but has a tendency to be highly prejudicial or to confuse the issues." *Cohn v. Papke*, 655 F.2d 191, 194 (9th Cir. 1981). An exception to the general rule allows the accused to present evidence of a pertinent trait of character to prove that he acted in conformity with that character trait at the time of the alleged crime. N.H. R. EV. 404(a)(1). Thus, to be admissible under 404(a)(1), two requirements

must be satisfied. *See United States v. Angelini*, 678 F.2d 380, 381-82 (1st Cir. 1982). First the proffered character evidence must be "pertinent." N.H. R. EV. 404(a)(1). Second, the evidence must constitute a "character trait." *Id.*; *see Angelini*, 678 F.2d at 381-82 (holding evidence does not constitute a trait when it is so diffuse as to be merely synonymous with good character generally).

The defendant relies on *State v. Ramos*, 121 N.H. 863, 435 A.2d 1122 (1981), to argue that the defendant can offer evidence of his general character and that he is not limited by Rule 404(a)(1). *Ramos* represents the common law of New Hampshire as it existed in 1981. We had not adopted the rules of evidence when *Ramos* was decided. In subsequently adopting the rules of evidence, we specifically provided that a *trait of character* must be *pertinent* to be admissible, *see* N.H. R. EV. 404(a)(1), and expressly provided that "[t]o the extent these rules alter or conflict with the common law, the rules shall govern," N.H. R. EV. 100; *see Newell*, 141 N.H. at 203, 679 A.2d at 1145. Accordingly, to the extent that *Ramos* can be read to imply that general character evidence is admissible absent a showing that the evidence constitutes a pertinent trait of character, it is no longer to be followed. *See Newell*, 141 N.H. at 203, 679 A.2d at 1145.

We begin by analyzing whether the proffered evidence is pertinent. Evidence is "pertinent" if it is relevant. *United States v. Roberts*, 887 F.2d 534, 536 (5th Cir. 1989); *United States v. Staggs*, 553 F.2d 1073, 1075 (7th Cir. 1977). Whether the proffered character evidence is relevant depends on whether it relates to the particular trait(s) that are relevant to the matter in controversy. *See State v. Lebel*, 594 A.2d 91, 93 (Me. 1991) (holding a trait is "pertinent" if its existence would be involved in the commission or non-commission of the crime charged).

■ We next consider whether not being the type of person to sexually assault or to take advantage of children is pertinent to the crime of aggravated felonious sexual assault involving a minor. We hold that, in this context, it is not. The trial court correctly noted that not being the type of person to sexually assault or to take advantage of children is not pertinent to the charged crime because such conduct is "generally not the type of conduct which is done in public, but an environment or location calculated to avoid detection." "One's reputation for sexual activity, or lack thereof, may have no correlation to one's actual sexual conduct." *State v. Jackson*, 730 P.2d 1361, 1364 (Wash. Ct. App. 1986). When a character witness testifies as to his opinion of the defendant's pertinent trait of

character, that opinion must be "confined to the nature and extent of observation and acquaintance upon which the opinion is based." *Government of Virgin Islands v. Petersen*, 553 F.2d 324, 329 (3d Cir. 1977). Because aggravated felonious sexual assault concerns "sexual activity, which is normally an intimate, private affair," *Jackson*, 730 P.2d at 1364, we hold that the character witnesses lacked the knowledge necessary to form an opinion as to whether the defendant is the type of person to sexually assault or to take advantage of children. Accordingly, the proffered evidence, lacking any foundation, would be irrelevant because it does not have the tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *See* N.H. R. EV. 401. We, therefore, conclude that the trial court properly excluded the proffered character evidence because it was not pertinent within the meaning of Rule 404(a)(1).

We next address the defendant's contention that the trial court denied him due process under both the State and Federal Constitutions when it precluded him from introducing specific instances of conduct to show that he was not the type of person to sexually assault or take advantage of children. Again, the defendant's brief advances an evidentiary argument, without any meaningful discussion of how his due process rights were violated. Accordingly, we will address only the defendant's evidentiary argument. *Cf. Fecteau*, 133 N.H. at 873, 587 A.2d at 598. Evidence of the defendant's character that would have taken the form of specific instances of conduct is governed by New Hampshire Rule of Evidence 405(b). Rule 405(b) provides: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct." The defendant has failed to show how the fact that he had opportunities to commit similar acts on other children but refrained from doing so is an "essential element" of his defense to the crimes charged. *See* RSA 632-A:2; *Newell*, 141 N.H. at 201-02, 679 A.2d at 1144-45 (victim's prior convictions for reckless conduct and simple assault inadmissible under Rule 405(b) because not an essential element of the defense of self-defense); *State v. Miller*, 709 P.2d 350, 354 (Utah 1985) (excluding specific instances of conduct to prove defendant's sexual morality because defendant's character was not element of crime of sexual abuse of child). We find no error in the trial court's ruling that the specific instances of conduct in question were inadmissible.

## II. Cross-Examination of State's Expert

Second, the defendant argues that the trial court's refusal to allow him to introduce privileged information concerning the victim, during the cross-examination of the State's expert witness, violated his rights to confrontation and to due process of law under both the State and Federal Constitutions. We will first examine the State Constitution, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), utilizing cases from federal courts and other jurisdictions to aid in our analysis, *see State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Because the Federal Constitution offers no greater protection to the defendant under these circumstances, *see State v. Adams*, 133 N.H. 818, 826, 585 A.2d 853, 857 (1991), we need not conduct a separate federal analysis.

Specifically, the facts which the defendant unsuccessfully sought to introduce during the cross-examination of the expert were: (1) hearsay statements by the victim's mother that she heard that the victim may have been sexually abused in a prior foster home; (2) hearsay statements of the victim to his therapist that he had engaged in what he believed to be inappropriate sexual contact with his younger brother and the resulting punishments he had received from his parents; and (3) that the victim did not disclose the allegations in question to his therapist at the time the acts were alleged to have occurred, notwithstanding the fact that he was disclosing the perceived inappropriate contact with his brother. We find no error.

The defendant does not contest the trial court's ruling that the mother's statements were inadmissible hearsay. Accordingly, we limit our review to the remaining two subjects of error.

The State presented an expert witness to testify on the subject of delayed disclosure by child victims of sexual abuse. The expert was presented with a series of hypothetical questions, containing facts pertinent to this particular case, and asked to render an opinion on delayed disclosure. During cross-examination, defense counsel was permitted to ask hypothetical questions, which contained some facts not in evidence due to their privileged nature, in an effort to challenge the expert's opinion. Counsel was not permitted, however, to introduce substantive evidence of the privileged information contained in the hypothetical questions. The defendant argues that the trial court's refusal to allow the privileged information into evidence deprived him of his constitutional rights.

A defendant's Part I, Article 15 right to confront witnesses may be sufficient to overcome an evidentiary privilege provided the defen-

dant can show that admission of privileged information is at least reasonably necessary to his defense. *Cf. State v. Eason*, 133 N.H. 335, 344-45, 577 A.2d 1203, 1209 (1990) (finding attorney-client privilege could be overcome if defendant meets burden of showing need). To establish a violation of a defendant's right of confrontation, the defendant must show that the trial court's ruling precluding admission of the privileged information prejudiced his defense. *See id.* at 345, 577 A.2d at 1209. The defendant has failed to meet this burden.

The additional facts presented in the defendant's hypothetical questions would not have aided the defendant's case. To the contrary, when defense counsel presented all of his hypothetical facts and solicited an opinion from the expert, the expert testified that his first impression was that the victim probably would not disclose the abuse. In other words, even if the trial judge had permitted the defendant to admit substantive evidence on the issues in question, the expert's opinion was that such information would lead him to believe that the victim would be less likely, as opposed to more likely, to disclose the abuse — a fact that would contradict the theory of defense at trial.

██ The defendant's due process claim likewise must fail. In order to establish a violation of due process under Part I, Article 15, "a defendant must show that the testimony he was precluded from introducing would have been material and favorable to his defense in ways not merely cumulative of other evidence." *Adams*, 133 N.H. at 826, 585 A.2d at 857. As noted above, introduction of the privileged information would not have been favorable to the defense.

*III. County Attorney's Communication*

Third, the defendant argues that his State and Federal due process rights were violated when the prosecuting attorney engaged in a communication with the chief justice of the superior court regarding a matter between herself and the judge originally assigned to the defendant's trial. This conversation subsequently led to the recusal of the judge, dismissal of the empaneled but unsworn jury, and rescheduling of the defendant's trial. The defendant did not know the content of this communication until the State revealed its nature at oral argument. The defendant urges us to use our supervisory authority to dismiss the charges against him for the alleged prosecutorial misconduct and due process violations that occurred.

The defendant argues that the county attorney's conduct in contacting the chief justice of the superior court constituted

prosecutorial misconduct that was of such an egregious nature that his due process rights were violated. In addition, the defendant contends that his due process rights were violated when, *inter alia*, after recusing himself, the judge ruled on the defendant's motion seeking admissibility of privileged matters relating to the victim.

To assess the defendant's due process claims under the State Constitution, we look to the principles of fundamental fairness. *See State v. Symonds*, 131 N.H. 532, 534, 556 A.2d 1175, 1177 (1989). "A fundamentally unfair adjudicatory procedure is one, for example, that gives a party a significant advantage or places a party in a position of prejudice or allows a party to reap the benefit of his own behavior in placing his opponent at an unmerited and misleading disadvantage." *Id.* (quotation omitted). Because the Federal Constitution offers the defendant no greater protection in these circumstances, *see Greer v. Miller*, 483 U.S. 756, 765 (1987); *Smith v. Phillips*, 455 U.S. 209, 219 (1982), we need not conduct a separate federal analysis.

The record indicates that the court conducted a hearing on, *inter alia*, the defendant's motion for admissibility of privileged matters relating to the victim on April 10, 1995. On April 12, 1995, the court conducted an in-chambers conference with counsel for both parties concerning the judge's recusal based upon the communication between the county attorney and the chief justice of the superior court. Notwithstanding his recusal from the case, the judge denied in part and granted in part the defendant's motion the following day.

At the outset, we find that the county attorney's actions, as well as her later characterization of those actions, do not constitute prosecutorial misconduct, *cf. State v. Boetti*, 142 N.H. 255, 260, 699 A.2d 585, 588 (1997) (concluding overreaching occurs "when, through intentional misconduct or gross negligence, the prosecutor has produced a situation in which the defendant could reasonably conclude that continuation of the tainted proceeding would result in his conviction" (quotation and ellipsis omitted)), and, accordingly, did not violate the defendant's rights to due process. Moreover, we note that at the April 12, 1995, chambers conference, after the judge indicated that he intended to recuse himself, he asked all counsel whether there was any objection to his rendering a decision on the defendant's motion. The defendant's counsel indicated that he had no objection, and the court issued its order the next day. Although the defendant filed a motion to reconsider that order, the defendant did not raise any objection to the order having been issued by the recused judge. Nor was that issue raised in the defendant's

subsequent motion to dismiss based on the county attorney's conduct. Finally, the record reveals that Judge Fauver re-addressed at least in part the admissibility of the privileged matters at issue in the defendant's motion during the course of the trial. Even if we assume that the defendant properly preserved for appeal the issue of whether the recused judge's ruling upon the defendant's motion violated due process, we conclude that the defendant has not demonstrated any prejudice and we find no violation of his due process rights. We have considered the defendant's remaining arguments on this issue and determine them to be without merit, warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*IV. New Hampshire Rule of Evidence 803(4)*

Lastly, the defendant argues that the trial court erred in admitting hearsay statements of the victim, made to his pediatrician, without first determining the purpose for which those statements were made. Excepted from the hearsay rule are

> [s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances indicating their trustworthiness.

N.H. R. EV. 803(4).

The defendant contends that the judge erroneously concluded that the victim's statements to his pediatrician were made for the purpose of medical diagnosis or treatment. "The trial court has discretion in applying Rule 803(4), and we will not disturb a ruling unless it is clearly erroneous." *State v. Lowe*, 140 N.H. 271, 273, 665 A.2d 740, 742 (1995) (quotation omitted). We examine three areas of inquiry in determining the admissibility of evidence under Rule 803(4): "the declarant's intent; the subject matter of the statements; and whether there are circumstances indicating the trustworthiness of the statements." *Id.* (quotation omitted). Because the defendant challenges only the first area of inquiry, we confine our analysis thereto. In cases where the declarant is a child, "we require extra care in determining the declarant's intent: The proponent of Rule 803(4) statements must present evidence establishing that the child

had the requisite intent, by showing that the child made the statements understanding that they would further the diagnosis and possible treatment of the child's condition." *Id.* (quotation and brackets omitted). It is sufficient to base this finding upon circumstantial evidence. *Id.*

 The doctor testified that the victim was a regular patient. At the time of trial, she had been the victim's primary care physician for four years. Although the victim did not testify as to his intent in reporting his complaints to his doctor, his doctor testified that the victim had two complaints when she examined him in June 1994. The doctor testified that she conducted examinations based upon these complaints, one of which involved the circumstances and conduct of the defendant as charged in the indictments. The other complaint involved the possible contraction of poison ivy on the victim's arm. The doctor conducted examinations of the victim's genital and rectal areas for the purpose of treatment, if necessary, and of his arm to check for poison ivy. Moreover, the doctor testified that the victim, although somewhat anxious, cooperated with her examination. In light of the circumstances in this case, we cannot conclude that the trial court's finding that "certain statements made by . . . [the victim] were for the purpose of medical diagnosis or treatment" was clearly erroneous. Accordingly, we find no error.

*Affirmed.*

All concurred.