Merrimack
No. 2003-434

THE STATE OF NEW HAMPSHIRE

v.

JAMES J. HALL

Argued: March 23, 2005
Opinion Issued: June 23, 2005

*Kelly A. Ayotte*, attorney general (*Jeffery A. Strelzin*, senior assistant attorney general, and *Elizabeth A. Dunn*, assistant attorney general, on the brief, and *Mr. Strelzin* orally), for the State.

*Chris McLaughlin*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

NADEAU, J. Following reversal of his original conviction for second-degree murder, *see State v. Hall*, 148 N.H. 394 (2002), the defendant, James J. Hall, was retried and again convicted in Superior Court (*McGuire*, J.) of second-degree murder in connection with the death of his mother. *See* RSA 630:1-b (1996). He now appeals his conviction. We affirm.

The record supports the following facts. The defendant and his mother shared an apartment in Concord, and had lived together for approximately ten years. On April 15, 1999, during a heated argument, the defendant lunged at his mother and strangled her until she died.

Preceding Mrs. Hall's death, the defendant was unemployed and financially dependent upon her. He alleged that his mother repeatedly criticized him for not having a job, being an alcoholic, and being just like his father. In the months preceding the murder, Mrs. Hall was preparing to stop supporting the defendant and to retire in New York to be near her sister. During this period, Mrs. Hall wrote her sister many letters in which she expressed her fear of, and frustration with, the defendant and disclosed her plan to move into a retirement community in New York. At trial, the State was allowed to introduce, over the defendant's objection, excerpts from those letters. They contained statements referring to the defendant, including: (1) "I don't know what to make of you know who. He sometimes frightens me ...."; (2) "I don't know if [he is] planning to do something to me, so if something does [*sic*], you will know who to blame for

my accident or death and I'm serious about the above. I really am scared now, but I stand up to him as best I can"; and (3) "I never thought I'd be afraid of my own son." This appeal followed.

The defendant argues that the trial court erred by: (1) denying his motion to dismiss the indictments on the grounds that the State presented only a portion of his testimony from his first trial to the grand jury; (2) not granting his motion to recuse; and (3) allowing the State to introduce excerpts from his mother's letters.

After reversal of the defendant's first conviction, the State planned to present to the grand jury alternative theories of second-degree murder. Prior to the grand jury proceeding, the defendant unsuccessfully moved to require the State to present a full transcript of his testimony from the first trial to the grand jury. The defendant now argues that his prior testimony reveals his mental state at the time of the murder, and that the State was obligated to present "all materially relevant portions of his prior testimony in order to avoid creating a misleading impression before the grand jury." We disagree.

 In conformity with the practice in most States, the proceedings of the grand jury are secret. *State v. Booton*, 114 N.H. 750, 755 (1974), *cert. denied*, 421 U.S. 919 (1975). Whether to permit invasion of the grand jury's secrecy is within the trial court's discretion in both the federal and state courts. *Id.* "A grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, it is an *ex parte* investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person." *United States v. Calandra*, 414 U.S. 338, 343-44 (1974). There is a presumption of regularity that attaches to grand jury proceedings. *State v. Dayutis*, 127 N.H. 101, 104 (1985). To overcome this presumption, the defendant must produce "evidence of irregularity or flagrant misconduct on the part of the prosecutor that deceived the grand jury or significantly impaired its ability to exercise independent judgment." *Id.* (quotation omitted).

 There is no dispute that the defendant has a constitutional right to have a grand jury consider the evidence and decide whether or not to return an indictment against him. *See State v. Erickson*, 129 N.H. 515, 518-19 (1987). While that right includes a requirement that the indictment clearly state the conduct which the grand jury found violated the Criminal Code, it does not require that all of the evidentiary details that the State intends to present at trial be included in the indictment. *See State v. Fennelly*, 123 N.H. 378, 386 (1983).

■ Here, the grand jury heard portions of the defendant's testimony from the first trial. After reviewing the record, we conclude that the defendant has not established any evidence of irregularity or flagrant misconduct on the part of the prosecutor that "deceived the grand jury or significantly impaired its ability to exercise independent judgment." *Dayutis*, 127 N.H. at 104 (quotation omitted). Moreover, the State is not obligated to present exculpatory evidence to the grand jury. *See United States v. Williams*, 504 U.S. 36, 53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."). Accordingly, we find no error.

Next, the defendant argues that the trial court erred by failing to grant his motion to recuse. He argues that the trial court created an "appearance of impropriety" by sending a letter to the Judicial Conduct Committee (JCC) concerning the conduct of his trial counsel. The defendant's argument is without merit.

The record reveals that a former client of defendant's trial counsel filed a complaint with the JCC against the judge. After being asked to respond, the judge noted in her reply to the JCC that the complaint was based on statements made in a pleading filed by the attorney. She further noted that she had recently responded to another judicial conduct complaint which was also based upon a memo authored by the same attorney. After learning of the trial judge's letter, the defendant moved to recuse the judge. Following a hearing, the trial judge denied the motion, stating in her order that a reasonable, objective person would not conclude that she was prejudiced or biased against either the defendant or his attorney.

■ A judge should disqualify herself in a proceeding in which her impartiality might reasonably be questioned, including but not limited to instances where "the judge has a personal bias or prejudice concerning a party or a party's lawyer." SUP. CT. R. 38, Canon 3E(1)(a). The party claiming bias must show the existence of bias, the likelihood of bias, or an appearance of such bias that the judge is unable to hold the balance between vindicating the interests of the court and the interests of a party. *State v. Jeleniewski*, 147 N.H. 462, 469 (2002). Whether an appearance of impropriety exists is determined under an objective standard. *Snow's Case*, 140 N.H. 618, 624 (1996).

■ After a review of the record, on the facts of this case, we conclude that, objectively viewed, no reasonable person would have determined that the trial court was prejudiced or biased against either the defendant or his attorney. Nothing in the judge's letter to the JCC even remotely suggests

that the judge had any such bias. Thus, we find no error in the trial court's order.

Finally, the defendant challenges the admission of excerpts of the letters written by the victim to her sister expressing her fear of the defendant. We review a trial court's decision on the admissibility of evidence under an unsustainable exercise of discretion standard. *State v. Amirault*, 149 N.H. 541, 543 (2003). To meet this standard, the defendant must demonstrate that the trial court's rulings were clearly untenable or unreasonable to his prejudice. *Id.*

 The defendant argues that the introduction of the excerpts from the letters violated New Hampshire Rule of Evidence 803 because they were inadmissible hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.H. R. Ev. 801(c). Hearsay is not admissible unless it falls within a well delineated exception. *See State v. Woods*, 130 N.H. 721, 725 (1988); N.H. R. Ev. 802. Rule 803(3) is an exception that allows hearsay to be admitted if it is "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed." To be admissible under this exception, "the declaration must concern the mental state of the declarant and have reference to the time at which the declaration was made." *MacDonald v. Bishop*, 145 N.H. 442, 444-45 (2000) (quotation and brackets omitted). The State sought to introduce excerpts of the letters to show Mrs. Hall's state of mind, which included her fear of the defendant, her intent to stop supporting him and her plan to change her living situation. We conclude the trial court's decision to admit relevant portions of the letters, to prove the state of mind of the victim in the months before her death, was a sustainable exercise of discretion.

 The defendant contends, nevertheless, that the evidence was not relevant. All evidence must be relevant to be admissible. N.H. R. Ev. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401. Evidence of a victim's fear of an accused is relevant when the accused admits to causing the victim's death, but argues that he did so unintentionally. *See State v. Haddock*, 24 S.W.3d 192, 195 (Mo. Ct. App. 2000). Accordingly, the trial judge could have found that the evidence was relevant to show the defendant's intent to kill his mother. Therefore, we find no error.

The defendant also argues that the trial court erred in admitting a portion of one of the letters because it does not have indicia of reliability sufficient to satisfy the Confrontation Clause as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Part 1, Article 15 of the New Hampshire Constitution. Even if the admission of that excerpt were error, however, we conclude beyond a reasonable doubt that the other evidence before the jury was more than sufficient to establish the defendant's guilt and that the State has demonstrated beyond a reasonable doubt that the verdict was not affected by admission of the challenged evidence. Any error, therefore, was harmless. *See State v. Davis*, 139 N.H. 185, 192 (1994).

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.